650 So.2d 1340 (1995)
T.M., as Next Friend of E.N.M.
v.
Donna NOBLITT, individually and as Principal, Casey Elementary School.
No. 91-CA-00536.
Supreme Court of Mississippi.
January 12, 1995.
Rehearing Denied March 30, 1995.
*1341 Isaac K. Byrd, Jr., Rhonda C. Cooper, Pieter John Teeuwissen, Byrd & Associates, Jackson, for appellant.
Pamela W. Dill, James A. Keith, Brunini Grantham Grower & Hewes, Jackson, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
SMITH, Justice, for the Court:
This case comes on appeal from an order of dismissal entered in the Circuit Court of Hinds County, Mississippi. The lower court determined Principal Noblitt, appellee herein, was entitled to qualified public immunity which effectively shielded her from liability in response to appellants' charges that she was negligent in carrying out the performance of certain tasks in her capacity as a public school official. We are of the opinion that the lower court correctly articulated the law of qualified public official immunity, but find that the dismissal of this cause was premature. Finding the matter is more properly suited for consideration following further discovery, we remand.

FACTS
On October 29, 1990, T.M. filed her original complaint on behalf of her minor daughter against Donna Noblitt, (Noblitt), principal of Casey Elementary School; Ben Canada, Superintendent of the Jackson Public School District; and all members of the Jackson Public School District Board of Trustees. The complaint charged the District officials with negligent retention and supervision of an employee, and Noblitt with negligent violation of a state statute. All defendants were dismissed by Memorandum Opinion and Order entered by Judge James D. Bell, Special Circuit Court Judge, on January 25, 1991.
On February 25, 1991, T.M. filed her Amended and Restated Complaint naming the same defendants, in their individual and official capacities, as well as naming Demetrist Perryman, a teacher's aide employed at Casey Elementary School. On March 27, 1991, T.M. filed a voluntary motion to dismiss all the defendants except Principal Noblitt and Perryman.
As this appeal stems from a Rule 12(b)(6) motion for dismissal, Noblitt for purposes of this appeal only has accepted the facts as set *1342 forth in T.M.'s complaint as true. T.M.'s statement of facts is as follows:
It was alleged that defendant Perryman, while under the supervision of defendant Noblitt, exhibited a propensity to fondle and sexually molest children, including minor plaintiff who was six years old. Minor plaintiff's mother notified defendant Noblitt of Perryman's molestation of minor plaintiff. Minor plaintiff's mother was advised that Perryman would be relieved of his duties. Noblitt failed to report said abuse as required by statute. As a result, plaintiff and her mother suffered mental anguish and trauma, anxiety and distress. Plaintiff alleged further that Noblitt's actions were grossly negligent and showed a careless disregard for the rights of minor plaintiff.
The court by Memorandum Opinion and Order dated April 25, 1991, concluded that the complaint as amended failed to state a set of facts which would pierce Noblitt's shield of qualified immunity and upon which relief could be granted.
Counsel for Noblitt responded with an Amended Motion to Dismiss and for Sanctions stating that the amended complaint again named Noblitt in her official capacity despite the previous order of dismissal, and raised no new allegations. By Memorandum Opinion and Order dated April 25, 1991, Judge James E. Graves, Jr., the complaint against Noblitt was dismissed in both her individual and official capacities. The motion for sanctions was denied.
Feeling aggrieved, T.M. perfected an appeal to this Court on May 23, 1991, and assigns the following issues for review:
I. IS DEFENDANT NOBLITT IMMUNE FROM COMPLAINT IN HER INDIVIDUAL CAPACITY?
II. DID THE TRIAL COURT ERR IN DISMISSING THE COMPLAINT BEFORE ANSWER BY THE DEFENDANTS AND BEFORE ANY DISCOVERY HAD BEEN COMPLETED?

DISCUSSION

I. IS DEFENDANT NOBLITT IMMUNE FROM COMPLAINT IN HER INDIVIDUAL CAPACITY?

Standard of Review
A motion to dismiss under Miss. R.Civ.P. 12(b)(6) raises an issue of law. Tucker v. Hinds County, 558 So.2d 869 (Miss. 1990); Lester Engineering Co. v. Richland Water and Sewer District, 504 So.2d 1185, 1187 (Miss. 1987). This Court conducts de novo review on questions of law. UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss. 1987).
When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. Overstreet v. Merlos, 570 So.2d 1196 (Miss. 1990); DeFoe v. Great Southern National Bank, 547 So.2d 786 (Miss. 1989); Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc., 521 So.2d 857 (Miss. 1988).
T.M. contends that Noblitt was "merely an employee of the school district," held no policy-making position, and performed purely ministerial acts. The complaint charges Noblitt was "grossly negligent in failing to report to the Department of Public Welfare her knowledge of Perryman's conduct with and abuse of plaintiff." Thus, particularly focusing on her "duty" to report child abuse under Miss. Code Ann. § 43-21-353 (Supp. 1991), the plaintiff contends that Noblitt is entitled to no immunity.
Noblitt responds that since she was employed by a political subdivision of the State of Mississippi and was required to perform discretionary duties, qualified immunity does extend to her.
In dismissing the complaint against Noblitt, the trial court noted:
Plaintiff's Amended and Restated Complaint charges defendant Noblitt with negligent retention and supervision of defendant Perryman and with negligent violation of statute. Qualified immunity provides public officials such as Noblitt with *1343 protection from suits resulting from the performance of discretionary duties. Davis v. Little, 362 So.2d 642, 644 (Miss. 1978). A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof. Poyner v. Gilmore, 171 Miss. 859, 158 So. 922, 923 (1935).
This Court has determined limited immunity applies to "those actions by a state agency, an arm of the state or local government and the members thereof, who either for remuneration or as public service, engage in discretionary functions for which the agency or the arm of government was set up." Hudson v. Rausa, 462 So.2d 689, 694 (Miss. 1984). Thus, Noblitt as an employee of the Jackson Public School District would be entitled to limited immunity if she is found to engage in discretionary duties in the performance of her job. Noblitt argues that her duty to report instances of child abuse is included within the discretionary acts she performs in her capacity as school principal.
The issue of common law qualified immunity was recently revisited in Womble v. Singing River Hosp., 618 So.2d 1252 (Miss. 1993). Therein the Court stated:
Common law qualified immunity has traditionally sought to protect the discretion of public officials so that those officials would not be deterred by the threat of suit from making decisions and formulating policies that are in the public good. State of Mississippi for the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321, 322 (Miss. 1986); Pruett v. City of Rosedale, 421 So.2d 1046, 1052 (Miss. 1982); and Hudson, 462 So.2d 689, 695 (citing Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir.1949) (Learned Hand, J.); See also, generally, Wyatt v. Cole, 504 U.S. [___], [___-___], 112 S.Ct. 1827, 1832-1833, 118 L.Ed.2d 504, 514-15 (1992) (contains thorough discussion of the history of and rationales underlying common law public official immunity). In Lewis, this Court noted that qualified immunity for the discretionary acts of public officials has evolved `[i]n order to allow our lawmakers and government officials to participate freely and without fear of retroactive liability in risk-taking situations requiring the exercise of sound judgment.' 498 So.2d at 322. In Gregoire v. Biddle, Justice Learned Hand said of qualified immunity:
The justification for doing so is that it is impossible to know whether the claim is well-founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matters from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.
177 F.2d 579, 581 (quoted in Hudson, 462 So.2d at 695). We noted a further rationale for removing such policy decisions from the purview of the Court in Pruett v. City of Rosedale, where we said
Judicial review of basic policy-making decisions continues to be regarded by many as inappropriate because courts have no standards by which to judge such decisions. Judges and jurors are in no better position to evaluate the reasonableness of policy determinations than are those officials who are charged with making them. The reasonable man standard of tort law is not an appropriate measure for the political, *1344 social or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.
421 So.2d at 1051-52.
Womble, 618 So.2d at 1263.
Earlier, this Court in Davis v. Little, 362 So.2d 642 (Miss. 1978), discussed in detail the doctrines of governmental and public official immunity. It was stated:
The immunity of a public official is a limited, not an absolute immunity. Since the purpose of the immunity is to protect the official in his decision-making role, we have held the immunity will not apply unless the action involves a discretionary decision-making process. Phrased otherwise, if the opinion is merely ministerial, there is no immunity. In Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1935), this Court said:
While no inflexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, "The most important criterion, perhaps, is that (if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion... ." (cite omitted).
362 So.2d at 644.
Here, taking the allegations in the complaint as true, it is assumed Principal Noblitt both retained and supervised Demetrist Perryman, and also failed to report the complaint of the abuse of T.M. under the reporting provisions of § 43-21-353. Of these specific allegations in the Amended and Restated Complaint, the lower court judge stated:
Although no personal involvement of Noblitt is alleged, plaintiff contends that defendant negligently retained and supervised Perryman in his role as teacher's assistant. The duty to hire and supervise employees is necessarily and logically dependent upon judgment and discretion.
Plaintiff further alleges that Noblitt violated Miss. Code Ann. § 43-21-353 (Supp. 1990) which requires a person in her position to report child abuse when she has "reasonable cause to suspect" abuse. An official must necessarily exercise her judgment in making the decision as to whether reasonable cause does indeed exist. Thus, this duty is also one dependent upon judgment and discretion of the official.
T.M. strenuously urges this Court to find that the duties Noblitt is charged with negligently performing are purely ministerial, not discretionary, thus eliminating the qualified immunity to which Noblitt is otherwise entitled. T.M. argues the duty to report abuse thus involved no degree of personal judgment or discretion on Noblitt's part and her failure to make such report was actionable negligence. As to the failure to report this instance of abuse, T.M. argues the duty is not discretionary as the language in the statute makes it clearly mandatory action. Miss. Code Ann. § 43-21-353 provides, in relevant part:
(1) Any ... public school district employee or any other person having reasonable cause to suspect that a child is a neglected or abused child, shall cause an oral report to be made immediately by telephone or otherwise and followed as soon thereafter as possible by a report in writing to the Department of Human Services... .
In response to Noblitt's claim that the determination as to whether or not "reasonable cause" existed required her to use her discretion, T.M. cites the following passage from this Court's decision in Poyner v. Gilmore:
That a necessity may exist for the ascertainment from personal knowledge or by *1345 information derived from other sources, of those facts or conditions, upon the existence or fulfillment of which, the performance of the act becomes a clear and specific duty, does not operate to convert the act into one judicial in its nature. Such, it is said, is not the judgment or discretion which is an essential element of judicial action.
The Poyner Court continued, citing the following examples:
Thus a sheriff must determine whether process coming into his hands for service, is issued from a court of competent jurisdiction and is regular on its face, and a treasurer of public money must ascertain whether a warrant for its payment is drawn by such an officer and is in such a form that its payment becomes a duty; but the execution of the process and the payment of the warrant are ministerial acts.
171 Miss. at 864-65, 158 So. at 923.
As we stated in Poyner, it is not always easy to determine whether a public official's conduct is ministerial or discretionary in any given case. This case is no exception. First, we cannot agree that the complained of conduct on Noblitt's part is properly comparable to the above-stated examples of purely ministerial duties this Court gave in Poyner. What a careful consideration of § 43-21-353 does make clear is that the statutory framework for reporting cases of suspected child abuse includes elements of both ministerial and discretionary conduct. Assuming a public official such as Noblitt is involved, the statute first requires that person to make a determination of whether "reasonable cause" exists as a foundation for an incident report. To that end, some investigation or other action on the official's part must be undertaken. The actual determination of whether reasonable causes exists, however, is clearly a decision involving the exercise of personal judgment and discretion. Obviously, if Noblitt investigated and concluded she lacked reasonable cause to support an abuse report, the statute would require her to take no further action. To the contrary, if Noblitt did investigate and determine reasonable cause existed to support the complaint, § 43-21-353 mandated that Noblitt issue an immediate oral report to the Department of Human Services stating the basis of any known information surrounding the complaint.
While the duty to investigate was of a ministerial nature, the next step of deciding whether reasonable cause actually existed to report the incident was inarguably one which required personal discretion. However, once a determination was made that reasonable cause did exist, there would have been no discretion in immediately reporting the incident. Our analysis can go no further without more information concerning Noblitt's course of action in response to T.M.'s complaint of abuse against the minor child, E.M.

II. DID THE TRIAL COURT ERR IN DISMISSING THE COMPLAINT BEFORE ANSWER BY THE DEFENDANTS AND BEFORE ANY DISCOVERY HAD BEEN COMPLETED?
As previously noted, this action was dismissed upon Noblitt's 12(b)(6) motion. T.M. complains that because she had already noticed depositions, the cause was prematurely dismissed and should be reversed and remanded in order to allow discovery to proceed further. She cites Malone v. Aetna Casualty and Surety Company, 583 So.2d 186 (Miss. 1991) in support. Therein, the trial court granted Aetna's motion for summary judgment under Miss.R.Civ.P. Rule 56. This Court reversed, noting that discovery had not yet been completed at the time of the hearing on the motion, and stating that a party should be "provided reasonably sufficient time to develop their theory of liability." Id. at 187. The Court noted that a motion for summary judgment "requires a careful review by the trial court of all pertinent evidence in a light most favorable to the nonmovant." Id. citing Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983).
It is true that contrary to Malone, the motion considered herein was submitted under Rule 12(b)(6), the purpose of which is to test the legal sufficiency of the complaint. *1346 "When considering a 12(b)(6) motion, the court's inquiry is essentially limited to the content of the complaint." Jackson v. Procunier, 789 F.2d 307, 309 (5th Cir.1986). However, we agree with T.M. that a decision was rendered somewhat prematurely in this cause. This matter is better suited for consideration under a Rule 56 motion for summary judgment following further discovery than for consideration based simply on T.M.'s complaint. We would suggest that affidavits from each side and particularly Noblitt would enable the court to better determine the issues presented herein. "A summary judgment motion is the same as a 12(b)(6) motion, it just occurs at a subsequent stage in the proceedings." Walton v. Bourgeois, 512 So.2d 698 (Miss. 1987). In conclusion, because we cannot say based on the limited facts available, that "it appears beyond a doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," we must remand to allow for further development of facts. Martin v. Phillips, 514 So.2d 338, 340 (Miss. 1987).

CONCLUSION
Principal Noblitt is entitled to qualified public official immunity as an employee in a policy-making or decision-making role with the Jackson Public School District in carrying out her discretionary duties. At the same time, there are duties set forth in § 43-21-353 which are not at all discretionary in nature. For instance, if, after investigation, it was determined there was reasonable cause to support a complaint of suspected child abuse, a mandatory, non-discretionary report to the proper agency is called for.
We remand for further proceedings not inconsistent with this opinion as it cannot be determined, based on the limited information before the Court, that T.M. has alleged no set of facts which, if proven, would entitle her to relief.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ. and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
BANKS, J., concurs with separate written opinion joined by McRAE, J.
BANKS, Justice, concurring:
I agree with the result reached by the majority. I write separately because I fear some confusion may arise due to what is, in my view, an unnecessary discussion of the discretionary and ministerial acts in the decision-making process, whether to report certain conduct. In my view, the teaching of Womble is that qualified immunity applies to governmental "policy-making" activity, not to general administrative or executive activity by one who happens to be a governmental employee. Womble v. Singing River Hospital, 618 So.2d 1252 (Miss. 1993). The decision whether to report particular activity falls in the latter category. The majority describes the determination of reasonable cause as "discretionary," suggesting that errors in that process are insulated. I disagree. The question is whether a reasonable person in similar circumstances would have found reasonable cause. That is an objective standard and it applies to all persons covered by the statute, regardless of whether they are government or private employees or actors. Womble, 618 So.2d at 1261.
The point is that discretion is not the sole determining factor. The type of decision to be made must be a governmental policy decision rather than simply a choice of courses that happens to have been made by one employed by the government in circumstances not necessarily governmental. Like the medical decision in Womble, the truck driver's decision as to what a safe speed under the circumstances is, the principal's decision in these circumstances is not a choice of governmental policy.
McRAE, J., joins this opinion.